United States District Court
Southern District of Texas

**ENTERED**

March 07, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **BRANDON E O'NEAL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:23-CV-04777** |
| | § | |
| **CITY OF HOUSTON, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**MEMORANDUM AND ORDER**</u>

Before the Court is Defendant City of Houston's Amended Motion for Summary Judgment. ECF No. 55. For the reasons that follow, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.   BACKGROUND

Both the parties and the Court are intimately familiar with the facts of this case, so the Court declines to repeat them here at length. Briefly, Plaintiff Brandon O'Neal is a firefighter employed by the City of Houston. O'Neal is currently employed as a Senior Communication Captain in the Houston Fire Department's (HFD) Office of Emergency Communications ("OEC") located at the Houston Emergency Center ("HEC"), where he works as a dispatcher.

O'Neal is a nondenominational Christian. Since 2020, O'Neal has worn a beard. According to O'Neal, his Christian faith compels him to wear a beard, particularly during observance of the "Nazarite Vow." ECF No. 55, Ex. N ("My religious belief is to have a beard as commanded and

required in the Holy Bible."); ECF No. 55; Ex. U ("When I observe the Nazarite Vow it requires no razor to touch my head and let the hair grow long.").

O'Neal's belief in beard wearing conflicts with the Houston Fire Department's grooming policy, which requires that firefighters be cleanshaven at all times. ECF No. 55, Ex. R. On August 4, 2022, O'Neal requested an exception from the clean-shaven policy on the basis of his religious belief. ECF No. 55 at 9. The request was denied on December 3, 2022. *Id*., Ex. P. The denial restated the grooming policy but did not provide additional explanation. *Id*. O'Neal emailed Assistant Fire Chief Rodney West, asking why his request had been denied. ECF No. 55 at Ex. Q. Chief West responded that O'Neal's supporting documentation did not support a religious exemption from the Department's grooming policy. *Id*. O'Neal submitted a second request for accommodation on March 11, 2023, citing the Equal Employment Opportunity Commission's (EEOC) guidelines that "If the employer reasonably needs more information, the employer and the employee should engage in an interactive process to discuss the request." ECF No. 55, Ex. S. After a lengthy back and forth between O'Neal and his superiors in the Department, the request was ultimately denied on April 16, 2024. ECF No. 55, Ex. DD. Again, the denial did not provide a specific reason, but rather directed O'Neal to the grooming policy. *Id*.

O'Neal remains employed with the Fire Department. However, since it came to the Department's attention that O'Neal was violating the grooming policy, he has been denied the opportunity to work overtime hours. The Department has been clear that O'Neal's noncompliance with the grooming policy is the reason for not allowing him to work overtime. ECF No. 55, Ex. BB.

2 / 9

Plaintiff filed this lawsuit on December 21, 2023. His remaining claims are for religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. Defendant has moved for summary judgment on all of Plaintiff's remaining claims.

## II.    DISCUSSION

## A. Religious Discrimination

"Religion," for purposes of Title VII, is defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

"To establish a *prima facie* case of religious discrimination under Title VII, the plaintiff must present evidence that (1) []he held a bona fide religious belief, (2) h[is] belief conflicted with a requirement of h[is] employment, (3) h[is] employer was informed of h[is] belief, and (4) []he suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Carter v. Loc. 556, Transp. Workers Union of Am.*, 156 F.4th 459, 478–79 (5th Cir. 2025). Here, Plaintiff alleges that Defendant unlawfully failed to accommodate his bona fide religious belief, which impacted the terms and conditions of his employment—namely, being denied the opportunity to work overtime. "Failure-to-accommodate claims. . . can be proven by showing the [plaintiff's] need for an accommodation was a motivating factor in an employer's [adverse] decision." *Id*.

Employers "have a defense against a failure-to-accommodate claim if accommodating the employee's religious practice or observance would impose an undue hardship [on the conduct of the employer's business]." *Id*.

### i. Sincerity

Defendant does not dispute that Plaintiff's belief conflicted with a requirement of his employment, that the City was aware of Plaintiff's belief, or that the denial of overtime constitutes and adverse employment action. Rather, Defendant "disputes that Plaintiff has, or can, establish a bona fide religious belief with respect to his espoused religious practice of wearing a beard." ECF No. 55 at 16. Defendant "concedes O'Neal has a faith belief encompassing much more than the sole practice of wearing a beard and that religious practices can evolve and harden over time," but argues that "O'Neal's practice of wearing a beard. . . lacks markers of sincerity." *Id*. at 19. Defendant's basic contention is that because O'Neal became aware of the existence of religious exemptions to employment requirements in 2019 and began wearing a beard in 2020, while his face was covered by a mask, but did not request accommodations until 2022, he cannot—as a matter of law—establish a sincerely held religious belief in beard wearing. Additionally, Defendant appears to argue that because O'Neal expressed some willingness to compromise his shaving requirements in hopes of agreeing on an accommodation, his belief is insincere.

The Court rejects this argument. There is ample evidence from which a jury could conclude that O'Neal's beliefs with regard to beard wearing were sincere, despite the supposed inconsistencies pointed to by Defendant. During the interactive process, O'Neal provided the City with a letter from his pastor, which stated: "Brandon took the Nazarite Vow. The Nazarite Vow is taken by individuals who have voluntarily dedicated themselves to God. Part of the vow is to wear

4 / 9

a beard for religious reasons." ECF No. 81, Ex. A. During various meetings with City personnel regarding his accommodations request, O'Neal pointed to specific Bible passages that supported his belief. ECF No. 55, Ex. N. Most importantly, both Chief West, who interviewed O'Neal about his accommodations request, and Chief Pena, the ultimate decisionmaker, acknowledged in their depositions that they did not question the sincerity of O'Neal's belief. ECF No. 81, Ex. B at 3 (Chief West Deposition); *id.*, Ex. C at 33 (Chief Pena Deposition). It is Chiefs Pena's and West's assessments of the sincerity of O'Neal's belief that is relevant to his Title VII claim, not defense counsel's. This evidence is clearly sufficient to create a genuine dispute of fact as to the sincerity of Plaintiff's religious belief.

### ii.     Undue Hardship

Defendant next contends that even assuming Plaintiff has met his burden to show a *prima facie* case of religious discrimination, summary judgment should be granted because, as a matter of law, Defendant has shown that accommodating Plaintiff's requested accommodation would present an undue hardship.

Title VII's "enduring requirement is that employers must deviate from neutrally applicable policies as a religious accommodation for employees when doing so would not impose undue hardship." *Loc. 556, Transp. Workers Union of Am.*, 156 F.4th 459, 484 (5th Cir. 2025)

The Supreme Court recently clarified that "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). Thus, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id*. at 470. In making this determination, "courts must. . . take[] into account all relevant factors in the case at

5 / 9

hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" *Id*. at 470-71 (internal citation omitted).

Here, there is a genuine dispute of material fact as to whether accommodating O'Neal's religious practice posed an undue hardship to the City (or more specifically the Fire Department). At the outset, the parties disagree on the nature of O'Neal's requested accommodation. O'Neal contends that he requested an exemption from the grooming policy that would allow him to wear a beard of up to three inches from the chin and one and a half inches from the face, including during the Nazarite Vow. Defendant contends that Plaintiff refused to specify a beard length and thickness that would remain consistent during the Nazarite Vow and thus requested a "total exemption" to the grooming policy.

While the Court agrees with Defendant that a "total exemption" to the grooming policy during periods when O'Neal was observing the Nazarite Vow would present an undue hardship, a jury could easily conclude that this was not what O'Neal requested. It is helpful to examine the specific language used by O'Neal. In an October 20, 2022 email, City employee Shelby Walker informed Plaintiff that he needed to provide "the particulars of the beard specification" requested, including "length from chin" and "height/thickness." ECF No. 55, Ex. O at 1. Plaintiff responded as follows:

> 1. I ask for the allowance of the beard to be 3 inches from the chin. Though *I may not typically keep this length normally, it may be necessary to complete a Nazirite vow* for a particular time. 2. I ask for the allowance of thickness to about 1 1/2 inch from the face. As earlier stated, *typically would be less but in the necessity to complete a Nazarite vow I can estimate this length*.

*Id*. at 2 (emphasis added). A jury could clearly interpret O'Neal as requesting a maximum length of three inches and maximum thickness of one and a half inches—even during the Nazarite Vow—

6 / 9

rather than a "total exemption" from the grooming policy. Indeed, this is the natural reading of O'Neal's request.

The relevant question is therefore whether, as a matter of law, Defendant has shown that allowing O'Neal to wear a three inch long, one-and-a-half-inch thick beard presented an undue hardship. The Court concludes that it has not. Notably, Plaintiff does not work in an active firefighting setting and is not deployed in emergencies. Rather, he works in dispatch at the Houston Emergency Center (HEC), alongside many other City and non-City employees. He is not required to wear personal protective gear and has not even been issued such gear. ECF No. 81, Ex. B. Chief West specifically stated in his deposition that safety concerns were not relevant to the denial of Plaintiff's request. See ECF No. 81, Ex. B ("Q: [D]id safety come into play in the decision to deny Captain O'Neil's request? A: Safety did not."). Additionally, the Court took judicial notice of the fact that other City employees who work alongside Plaintiff at the HEC, such as police officers, wear beards. *See* Minute Entry for February 11, 2026. Finally, the undue burden now asserted by Defendant in its summary judgment motion—"safety concerns related to O'Neal's ability to wear SCBA face piece and/or other safety equipment"—were never mentioned in the letters denying O'Neal's requests for accommodation. Thus, a jury could reasonably conclude that accommodating O'Neal's religious practice would not pose an undue hardship to the City.[1]

---

[1] Even assuming that the accommodation offered by Defendant after this Court ordered the parties to confer and attempt to reach a mutually acceptable accommodation could be properly considered by a jury (of which the Court is not convinced), the Court also agrees with Plaintiff that a jury could find the proposed accommodation inadequate. Defendant offered to allow Plaintiff to wear a beard of up to 10 millimeters and to take vacation from work during periods where he is observing the Nazarite Vow. Given Plaintiff's religion requires him to abstain from shaving during observance of the Nazarite Vow, a 10-millimeter beard would likely be insufficient. A jury could likewise reasonably conclude that requiring Plaintiff to take unpaid time off from work during his

### B. Retaliation

Defendant also argues that it is entitled to summary judgment on Plaintiff's Title VII retaliation claim. To the extent that Plaintiff is actually making such a claim, the Court agrees.

To establish a *prima facie* case of retaliation, a plaintiff must show "(1) that he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 551 (5th Cir.2009) (citations and internal quotation marks omitted).

In his Amended Complaint, O'Neal alleges that he was "retaliated against" on the basis of his request for accommodation and subsequent EEOC complaint. CITE. He asserts the same purported adverse employment action at issue in his religious discrimination claim, namely, denial of overtime hours. However, Plaintiff has presented no evidence that he was denied overtime on account of his request for accommodation or EEOC claim, rather than his admitted noncompliance with the grooming policy. Indeed, Plaintiff states in his complaint that "The City] continues to retaliate against [him] by refusing to accommodate his sincerely held religious beliefs and by refusing to allow him to work overtime assignments." ECF No. 17 at ¶ 24. This merely restates Plaintiff's religious discrimination claim. Additionally, the Amended Complaint does not actually list retaliation as a cause of action.

Plaintiff has not substantively addressed Defendant's arguments with regard to retaliation in his summary judgment response. Since Plaintiff has not pointed to any facts suggesting "that a

---

religious observance, which could significantly impact Plaintiff's income, was insufficient to accommodate his practice.

causal link existed between [his request for accommodation and EEOC claim] and the adverse [employment] action," summary judgment in favor of Defendant is warranted on Plaintiff's retaliation claim. *Ikossi–Anastasiou*, 579 F.3d at 551. The allegation that the City illegally disciplined Plaintiff for his failure to comply with the grooming policy is properly assessed under Plaintiff's religious discrimination claim.

## III.   CONCLUSION

Defendant's Amended Motion for Summary Judgment (ECF No. 55) is therefore **DENIED** as to Plaintiff's religious discrimination claim and **GRANTED** as to Plaintiff's retaliation claim.

**IT IS SO ORDERED.**

Signed at Houston, Texas on March 6, 2026.

Keith P. Ellison
United States District Judge